UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Shawn Bellegia,                                  :     Case No. 1:13-cv-654
                                                 :
      Plaintiff,                                 :
                                                 :
vs.                                              :
                                                 :
Givaudan Flavors Corp.,                          :
                                                 :
      Defendant.                                 :

## ORDER

Before the Court is Defendant's motion for summary judgment.  (Doc. 15)

Defendant argues that Plaintiff's claims arising from his prior employment with

Defendant lack merit, and that it is entitled to judgment as a matter of law.  Plaintiff

opposes the motion (Doc. 19), and Defendant has filed its reply.  (Doc. 24)

For the following reasons, the Court will grant Defendant's motion.

## FACTUAL BACKGROUND

Plaintiff Shawn Bellegia was hired by Givaudan Flavors Corporation in August

2007 as a Customer Care Representative.  From then until 2011, he alleges that he

received exemplary performance reviews, and was assigned to prestigious customer

accounts.  In the spring of 2011, Bellegia had gallbladder surgery and took FMLA leave.

He also received three weeks of short-term disability leave, provided under Givaudan's

policies.  He returned to work in June 2011.

Before his surgery, Bellegia had been approved to take vacation in June 2011.

When he returned to work after surgery, he alleges that he was told that the approval

had been reversed while he was on leave.  He further alleges that he suffered some

complications stemming from his surgery, which required additional visits to his physician. He alleges that his immediate supervisor, Jeanine Risener, repeatedly asked him if these visits were due to his prior surgery or were due to a different medical issue.

Bellegia alleges on information and belief that Givaudan managers held meetings in 2011 and 2012, during which certain managers called employees who used short-term disability leave "unreliable," and made other derogatory comments about them. These managers said they were "fed up" with employees taking short term disability leave. They decided that when these unnamed employees returned to work, their vacation time would be taken away because "they've taken their vacation as short-term disability." (Doc. 3 at ¶17) Bellegia also alleges on information and belief that management removed top-performing employees from highly-rated customer accounts simply because they had used short-term disability leave. (Id. at ¶18)

After he returned from leave, Bellegia was demoted to a less prestigious customer account. He then alleges that on May 15, 2012, he was abruptly terminated for reasons that he alleges were pretextual. Bellegia's supervisor at that time was DeLisa Niemoeller, and she made the decision to terminate his employment. Niemoeller wrote a letter to Bellegia dated May 15, 2012, which stated that he was being terminated "for your repeated refusal to effectively collaborate with, and support, internal and external customers in a timely manner." (Bellegia Dep. Ex. 7) The letter described several specific incidents that had occurred over the prior week in which Bellegia failed to properly manage his accounts and his customers.

Bellegia filed a charge with the EEOC on October 2, 2012, alleging he was

terminated because he used short-term disability in 2011, despite his "excellent performance record and a history of raises."  (Doc. 17-2 at PAGEID 154)   During the EEOC investigation, Bellegia sent an email to an EEOC investigator to provide her with a "brief snapshot" of his situation.  In this email, he told the EEOC: "I truthfully feel that this all stems from a harassment claim I filed with my director a year ago.  There was a female employee that made an inappropriate comment to me which made me feel uncomfortable in the workplace."  (Bellegia Dep. Ex. 2) This employee and Bellegia's director were personal friends, and he told the EEOC that his director revoked his pre-approved vacation time and then gave him a negative performance review because he had complained about the female employee.

After receiving a right to sue letter, Bellagia filed this lawsuit on September 17, 2013.  His amended complaint includes four claims for relief: disability discrimination under the Americans with Disabilities Act and Ohio Rev. Code 4112; ERISA discrimination (29 U.S.C. §1140); retaliation under the Family and Medical Leave Act (29 U.S.C.§ 2615(a)(2)); and a claim of interference with his rights under the FMLA (29 U.S.C. §2615(a)(1)).  (Doc. 3)

Givaudan's motion contends that the undisputed facts in the record entitle it to summary judgment on all of Bellegia's claims, which are all premised on Bellegia's central contention that he was terminated because he took FMLA leave and received short-term disability benefits when he had surgery in May 2011.  Bellegia does not dispute that Niemoeller was the sole decision-maker concerning his termination. Niemoeller became the manager of Bellegia's Customer Care Group in November 2011, after Bellegia completed his leave and returned to work in June 2011.  Niemoeller

has submitted an affidavit stating that she "knew nothing about any disability [Bellegia] might have or any leave he might have taken when I made the decision to terminate him in 2012."  (Doc. 17, ¶6)

Bellegia does not contest Givaudan's motion with respect to his disability discrimination claims.  But he contends that he has both direct and indirect evidence of "a culture of discrimination and retaliation" against employees who took FMLA or disability leave, and that he has established a genuine factual dispute about the stated basis for his termination.  He therefore argues that his FMLA retaliation and interference claims, and his ERISA claim, should proceed to trial.

## DISCUSSION

### Summary Judgment Standards

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An assertion of a undisputed fact must be supported by citations to particular parts of the record, including depositions, affidavits, admissions, and interrogatory answers.  The party opposing a properly supported summary judgment motion "'may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) (internal quotation omitted).  The burden is on the non-moving party to "present affirmative evidence to defeat a properly supported motion for summary judgment...," Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. Anderson, 477 U.S. at 250.

-4-

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.  Anderson, 477 U.S. at 249.  The court must assess "whether there is the need for trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250.

The party bringing the summary judgment motion has the initial burden of informing the district court of the basis for its motion and identifying portions of the record that demonstrate the absence of a genuine dispute over material facts.  Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc., 276 F.3d 845, 848 (6th Cir. 2002).  Once that occurs, the party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989).

FMLA Claims

Bellegia alleges retaliation and interference claims under the FMLA, 29 U.S.C. §§2615(a)(1) and (a)(2).  Employers are prohibited from retaliating against employees who take FMLA leave, and from using the exercise of FMLA rights as a negative factor in employment actions concerning those employees.  Hunter v. Valley View Local Schools, 579 F.3d 688, 690-691 (6th Cir. 2009).

As an initial matter, the basis for Bellegia's interference claim is not clear to the

Court.  He concedes that he was granted FMLA leave for his gallbladder surgery, and he does not allege any other request for FMLA leave or disability benefits that Givaudan denied him.  His amended complaint alleges that after he returned from leave, his supervisor revoked his previously approved vacation time.  But he admitted in his deposition that he was ultimately allowed to take his vacation after he sought assistance from human resources.  Even if he was not, that conduct would appear to fall under the retaliation prong of the statute.  The same would appear to be true with respect to his allegation that after he returned from leave, he was transferred from a large customer account to other, less prestigious accounts.

Bellegia cites Bradley v. Mary Rutan Hosp., 322 F.Supp.2d 926, 940 (S.D. Ohio 2004), where the district court noted that an interference claim requires evidence that "the employer has somehow used the employee's FMLA leave against him and in an unlawful manner as provided under the FMLA."  That case involved peculiar facts and somewhat convoluted arguments by the parties.  For that reason, the district court stated that it would simplify its consideration of plaintiff's allegations by adopting "a single framework" for all of the plaintiff's FMLA claims.  Id. at 939-940.

However, as the district court also noted in Bradley, the Sixth Circuit has held that a claim for retaliatory discharge is cognizable under both an interference theory and a retaliation theory.  See Wysong v. Dow Chemical Co., 503 F.3d 441, 446-447 (6th Cir. 2007).  Bellegia argues that Givaudan used his exercise of FMLA rights against him when it decided to terminate him the year following his leave, thus interfering with his statutory rights.  The Court will therefore consider the interference and retaliation prongs of his claims together in analyzing Bellegia's arguments, as he concedes that both

-6-

require him to show the decision-maker's knowledge of his exercise of FMLA rights.

Bellegia first contends that he has direct evidence that Niemoeller targeted him for termination because he had used disability and FMLA leave.  Bellegia relies on the July 1, 2014 declaration of Shari Dilg, a former Givaudan employee who worked at the company from 2006 through February 2012 as a customer care supervisor and "SAP liaison."  (Doc. 15-2 at ¶2)  Dilg was one of Bellegia's supervisors from 2008 through the summer of 2011, when she was assigned to work in Givaudan's New Jersey plant for a few months.  There, she heard comments by the plant manager that he was "sick and tired of employees using disability leave" and "milking sick leave."  He said that "we are taking away their vacation because they've taken their vacation as disability leave."  (Id. at ¶7)

Dilg returned to Cincinnati in the fall of 2011.  In November 2011, Niemoeller took over as the director of the customer care department.  Dilg believes that Niemoeller and the New Jersey plant manager were "friendly acquaintances."  After she returned to Cincinnati, Dilg participated in management meetings that included Niemoeller, Nicole Milliken, and Annie Weierman.  Her affidavit further states:

> On at least three occasions during these management meetings, DeLisa Niemoeller made discriminatory comments about employees who had previously used disability or FMLA leave.  Ms. Niemoeller also described employees who had previously used disability or FMLA leave as 'unreliable because of their health issues.'

> In late 2011 and early 2012, Ms. Niemoeller discussed removing [customer care representatives] who had previously used disability or FMLA leave from their customer care accounts based on Ms. Niemoeller's negative opinion of employees who had previously used disability or FMLA leave.

(Doc. 15-2, ¶¶11 and 12)

Direct evidence is "evidence that proves the existence of a fact without requiring any inferences." Rowan v. Lockheed Martin Energy Systems, 360 F.3d 544, 548 (6th Cir. 2004). The Sixth Circuit has held that direct evidence is that which, if believed, requires a conclusion that unlawful retaliation was at least a motivating factor in the employer's actions. No inferences are required; the illegal animus is "explicitly expressed." Amini v. Oberlin Coll., 440 F.3d 350, 359 (6th Cir. 2006). The evidence must establish "not only that the plaintiff's employer was predisposed to discriminate on the basis of [protected activity], but also that the employer acted on that predisposition." Demyanovich v. Cadon Plating & Colatings, LLC, 747 F.3d 419, 432 (6th Cir. 2014) (internal citation omitted). In that case, an employee was missing work due to health problems. At the end of a regular shift, he asked his supervisor about taking FMLA leave, because he did not qualify for additional excused absences. The supervisor told him he was a "liability" and that the employer was not covered by the FMLA, and terminated his employment that night. The Sixth Circuit found this was direct evidence of retaliatory motive.

Dilg's description of what Niemoeller said during management meetings, or the comments attributed to the New Jersey plant manager, are not direct evidence that Bellegia was terminated because he used FMLA leave or short-term disability benefits. Additional inferences would be required to establish a causal link between Niemoeller's discussion of removing customer care representatives from managing certain accounts, and her decision to terminate Bellegia's employment months later in May 2012. Niemoeller's comments do not **require** a conclusion that retaliatory animus motivated her decision to terminate Bellegia's employment.

-8-

Bellegia alternatively relies on indirect evidence to support his FMLA retaliation and interference claims.  To establish a prima facie retaliation claim, Bellegia must show that (1) he exercised his FMLA rights; (2) he suffered a materially adverse action; and (3) a causal connection exists between the two events.  An FMLA interference claim requires Bellegia to establish that (1) he was an eligible employee; (2) Givaudan was a covered employer; (3) he was entitled to FMLA leave; (4) he gave notice of his intention to take FMLA leave; and (5) Givaudan denied him FMLA benefits to which he was entitled.  Novak v. MetroHealth Med. Ctr, 503 F.3d 572, 577-578 (6th Cir. 2007)(internal citations omitted).  The same elements generally apply to Bellegia's ERISA discrimination claim, as he must show that the adverse action or prohibited conduct was taken "for the purpose" of interfering with his right to ERISA-protected benefits.  As noted previously, all of Bellegia's claims require showing that the decision maker knew that he exercised his statutorily-protected rights, and a causal connection between Bellegia's protected activity and his termination.  Givaudan contends that Bellegia cannot show that Niemoeller knew of his protected activity.

Bellegia responds that Niemoeller's "self-serving testimony" that she did not know about his FMLA leave cannot support entry of summary judgment.  (Doc. 19 at 8) He cites three reasons that the Court should discount her sworn affidavit.  First, Niemoeller was a part of the managerial "team" when he took FMLA leave in May 2011, and remained in management until she became the interim director of the customer care group in November 2011.  Second, Niemoeller had access to his personnel file, which he asserts would have included information about his leave.  In the second declaration of Shari Dilg dated September 5, 2014 (Doc. 19, Ex. 1), Dilg states that

throughout her employment, "the customer care management team kept personnel files for each customer care representative.  These personnel files included dates of past short-term disability and FMLA leave for each customer care representative.  Customer care managers and directors had access to these personnel files." (Id. at ¶13)  Since Niemoeller would have had access to the files at least by November 2011, when she became interim director (and Bellegia's supervisor), she would have had access to information about Bellegia's FMLA and short-term disability leave.  Third, Niemoeller's comments during the management meetings (as described by Dilg) reflect her knowledge that certain employees had taken FMLA leave.  Bellegia asserts that two employees were "targeted" by Niemoller because they took leave in 2009 and 2011 (before Niemoeller became the director), raising an inference that she "targeted" Bellegia on the basis of his 2011 leave.  To support this assertion, Bellegia cites Givaudan's interrogatory answer identifying all of its customer care representatives who took leave and who subsequently left the company.

These arguments are not sufficient to reject Niemoeller's affidavit, or raise a reasonable inference that she must be lying.  Her statements about removing employees from customer accounts is not equivalent to voicing an intent to fire them. The fact that she had access to personnel files does not show that she actually reviewed Bellegia's file and learned from the file about his prior FMLA leave.  Dilg does not offer any testimony or evidence that anyone told Niemoeller about Bellegia's leave. The Court has also reviewed Givaudan's interrogatory answer, and cannot conclude from that list that anyone was "targeted" after taking FMLA leave, much less that it was

-10-

Niemoeller who did the "targeting." [1]

The Sixth Circuit has often observed that a plaintiff's prima facie burden is not intended to be an onerous one.  But it does require Bellegia to come forward with evidence, not  speculation that (for example) access to his personnel file might have led Niemoeller to actually review it, and to discover that he took FMLA leave, and then to "target" him for termination.  But assuming that Bellegia could establish a prima facie claim because he has raised a genuine factual dispute about Niemoeller's knowledge, the burden shifts to Givaudan to demonstrate that its decision was based on a legitimate, non-discriminatory reason.  This burden is one of production only.  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000).  Inadequate performance is a legitimate reason to terminate an employee.

Bellegia must then come forward with evidence demonstrating that the reason given in Niemoeller's termination letter was pretextual.  He may do so by demonstrating that (1) the stated reason has no basis in fact, (2) the reason given is not the actual reason for his termination, or (3) the reason is insufficient to explain the adverse action.  See Imwalle v. Reliance Med. Products, Inc., 515 F.3d 531, 545 (6th Cir. 2008), citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).  The Sixth Circuit has made it clear that it has

> ... never regarded those categories as anything more than a convenient
> way of marshaling evidence and focusing it on the ultimate inquiry: did the
> employer fire the employee for the stated reason or not? ... As we have

---

[1] Givaudan cites Dilg's testimony in her own lawsuit against Givaudan, where she identified three female employees that Niemoeller was "trying to get out of the company" or shifted to other accounts.  According to Givaudan's interrogatory answer (Doc. 27), none of the three female employees have been terminated.

> stated, at bottom the question is always whether the employer made up its
> stated reason to conceal intentional [discrimination].

Tingle v. Arbors at Hilliard, 692 F.3d 523, 530 (6th Cir. 2012)(internal citations and

quotations omitted).  Bellegia must produce sufficient evidence from which a jury could

infer that Givaudan used the fact that he had taken FMLA leave in deciding to terminate

him.  See, e.g., Johnson v. Kroger Co., 319 F.3d 858, 866 (6th Cir. 2003).   He cannot

simply dispute the accuracy of the articulated reasons, but must offer some evidence

that "... not only were the employer's reasons false, but that retaliation was the real

reason for the adverse action."  Tingle v. Arbors at Hilliard, 692 F.3d at 530 (internal

citation omitted).

Bellegia alleges that his job performance was excellent until he was abruptly

terminated.  But he conceded in his deposition that before his FMLA leave, he had been

criticized by his supervisor (Sharon Dilg) for his management of a very important

customer account.  (Bellegia Dep. Ex. 4)  Dilg also sent an email to Annie Weierman

(another manager) on March 25, 2011, describing her concerns about Bellegia's ability

to handle this very important account.  (Bellegia Dep. Ex. 5) Bellegia also admitted that

about two weeks before he was terminated, he admitted to Niemoeller and another

manager that he was "struggling" with two large accounts, and only five days before that

he said he was "having trouble keeping up." (Bellegia Dep. Ex. 8)  Bellegia claims that

his mistakes were just small ones, and perhaps not even "really" mistakes, but he did

not deny that the incidents cited in the termination letter took place.  He suggests that

he was criticized and "nit-picked" for mistakes that other employees also made, but

other employees were not criticized or disciplined as a result.  But he has no evidence

that this occurred, or suggesting that his mistakes and errors cited in the termination letter were substantially similar to those made by other employees who did not take FMLA leave or were not terminated.

Bellegia argues that the stated reason for his termination was "a combination of twisted facts and minor errors" that were made by all of the customer representatives. (Doc. 19 at 11)  But his subjective belief is not sufficient to show that the stated reason did not actually motivate Niemoeller's decision to terminate him.  He has no evidence demonstrating that Givaudan did not honestly believe that the errors cited in the letter were sufficient to justify his termination.  At best, he suggests that the comments made by Niemoeller and the New Jersey plant manager (who was not involved in his hiring or firing) reflect an "atmosphere" of hostility and retaliatory animus towards any employee who exercised FMLA rights.  That suggestion is belied by the data reflected in Givaudan's interrogatory response, listing all of the customer care representatives who worked at the Cincinnati location during Bellegia's tenure, those who took FMLA or disability leave at any time, and those who have been terminated or left the company. Of the total of 69 employees, 18 took some period of FMLA or disability leave during that period; of those 18, 9 have left the company: one retired, two resigned for other jobs, one employee's position was eliminated, four resigned for personal or private reasons; Bellegia was terminated based on performance; and one was terminated two years before Bellegia for violating company policy.

This pattern for the customer care representatives does not reflect an atmosphere of hostility or retaliation against employees who exercised their right to FMLA leave or short-term disability.  And Bellegia has no evidence suggesting that

-13-

Givaudan's responses are incorrect or inaccurate in any way, or any other evidence suggesting that an atmosphere of retaliatory bias and prejudice existed at the company.

After considering the entire record in this case, the Court must conclude that Bellegia has not established a genuine factual dispute that the reasons cited by Givaudan for his termination are a pretext for unlawful retaliation, or interference with his FMLA rights and his ERISA-protected disability benefits.

**CONCLUSION**

For all of the foregoing reasons, the Court grants Defendant's motion for summary judgment. (Doc. 15) Defendant's motion for oral argument (Doc. 31) is denied as moot.

Plaintiff's amended complaint and each claim alleged therein is dismissed with prejudice.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: February 2, 2015                         s/Sandra S. Beckwith
                                                Sandra S. Beckwith, Senior Judge
                                                United States District Court

-14-